IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


THOMAS TERRAIL NOLEN                                                          PLAINTIFF

v.                                          Civil No. 6:20-CV-06112-SOH-MEF

DEPUTY DILLON D. LEDBETTER and                                              DEFENDANTS
DEPUTY RIDINGS (#189)

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed under 42 U.S.C. § 1983.  Pursuant to the provisions of 28

U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge,

referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment, Brief in

Support, and Statement of Undisputed Facts.  (ECF Nos. 130, 131, 132).  Plaintiff filed his

Response, Brief in Support, and Statement of Facts Supporting Claim on April 10, 2023.  (ECF

Nos. 135, 136, 137).  Defendants filed a Reply on May 1, 2023.  (ECF No. 144).

## I.        BACKGROUND

Plaintiff filed his Complaint on October 1, 2020.  (ECF No. 1).  He filed a Motion to Amend

on October 8, 2020, which was granted the next day.  (ECF Nos. 7, 8).  After several address

changes and returned mail (ECF Nos. 9, 10, 11, 12, 13), Plaintiff filed his First Amended

Complaint on November 16, 2020.  (ECF No. 14).  Plaintiff filed two Motions to Amend which

were denied on October 13, 2021, because Plaintiff failed to follow the procedural requirements

for those motions.  (ECF Nos. 42, 45, 60).

On November 29, 2021, the Hon. Barry A. Bryant entered a Report and Recommendation

recommending dismissal of Defendant Jeremy Ledbetter because Plaintiff failed to provide a valid

1

service address.  (ECF No. 67).  The Report and Recommendation was adopted on December 20, 2021.  (ECF No. 70).  On January 19, 2022, Plaintiff filed a Motion to Amend and a Motion to Dismiss Parties.  The Motion to Dismiss sought to dismiss Defendant Parole Officer Danny Marstt and Defendant Officer Chad Ledbetter without prejudice as parties in the case.[1]  (ECF Nos. 71, 72).  Defendants filed a Response to the Motion to Dismiss Parties, stating they had no objection to the dismissal of Defendant Marstt[2] from the case.  They did not indicate if Defendant Chad Ledbetter had any objections.  (ECF No. 73).  Plaintiff's Motion was granted on January 28, 2022, and both Defendants were terminated as parties in the case, leaving only the John Doe Defendants in the case.  (ECF No. 74, 75).  Plaintiff's Motion to Amend was granted in part and denied in part on January 3, 2022.  (ECF No. 75).  Plaintiff was permitted to substitute Deputy Dillon Ledbetter and Deputy Ridings (#189) for the original John Doe Defendants.  (*Id.*).  Plaintiff's request to add the Malvern Police Department and Malvern Police Chief Tabor were denied as futile.  (*Id.*).  Plaintiff's Second Amended Complaint was filed on February 3, 2022.  (ECF No. 76).

Pursuant to the Court's Order, Plaintiff's Second Amended Complaint names Deputy Ridings (#189) and Deputy Dillon Ledbetter as Defendants.  (ECF No. 76 at 1).  For his first claim, Plaintiff alleges Defendant Ridings used excessive force[3] to arrest him in the Andy's Restaurant parking lot after a traffic stop on December 26, 2019.  (*Id.* at 4).  Plaintiff describes the incident and the events leading up to it as follows:

[1] Plaintiff characterized this as "with prejudice," but his statement that he would bring the cases against them "back at a later date" indicated he sought to dismiss "without prejudice."

[2] According to the Response, Defendant Marstt's correct name is Marsh.

[3] Plaintiff also lists false imprisonment, right to due process, "13th Amendment," lack of probable cause and conspiracy to convict for this and his other claims.  However, excessive force is the only constitutional claim arguably raised with the facts provided.  Additionally, Plaintiff himself characterized this case as being one for the use of excessive force in *Nolen v. Cash*, Case No. 6:21-cv-06151-SOH-MEF, ECF No. 20 at 12.

On or about December 19, 2019,[4] Detective Savage and Drug Task Force attempted an arrest at the Relax Inn Motel. No drugs were found. On December 26, 2019, plaintiff was pulled over on a traffic stop. Deputy Ridings and John Doe Deputy officers used excessive force while making an arrest. Deputy Ridings forcefully shove me into the back of the police car. He punched me two times into my belly. I complained that my handcuffs were too tight. My work boots were ripped off as Deputy Ridings searched for contraband. After several hours of complaining of pain, I was taken to jail. I wasn't accepted because I complained of an injury and had to be taken to the hospital first. Out of anger, Deputy Ridings dragged me in and out of my wheel-chair I was in. He kicked me in the ass shoving me in the back of the police car, in the sally port. I was drug out of the car onto the pavement at the hospital. Injuring my hernia. My bladder fell into my hernia. Emergency surgery was needed. (*Id*. at 4-5).

Plaintiff proceeds against Deputy Ridings in his official and individual capacities. As his official capacity claim, Plaintiff alleges: "The Malvern Police Department practices the use of force to make lawfull (sic) and unlawfull (sic) arrests. The Malvern Police Department conspires with local law enforcement and court officials to make illegal arrests." (*Id*. at 5).

For his second claim, Plaintiff alleges that excessive force was used against him at the Relax Inn Motel on January 5, 2020. (ECF No. 76 at 5-6). Plaintiff names Deputy Ridings for this claim. (*Id*. at 5). Specifically, he alleges:

On January 5, 2020 several police officers including Deputy Ridings were hiding while knocking on the side of my motel room next to the street. They did not announce themselves. I opened the door and saw it was the police, so I closed the door. Deputy Ridings and John Doe Deputy began kicking the door in. Personal items were broken and money was taken in the amount of $800.00. Deputy Ridings threw me to the floor. I reminded him of my injury. He smiled and rammed his knee into the small of my back. I complained of pain to several officers. Nothing was done and no drugs were found. My hernia was re-injured and my back was injured. Police said they had a warrant, but never showed it for obscunding, b/c it was issued by P.O. Danny Marst on January 3, 2020 and was recalled on 1/3/20 b/c I was not arrested on 12/26/19 which would have been a violation of my parole. (*Id*. at 6).

---

[4] In later documents for this case, Plaintiff appears to confuse December 19th and December 26th and uses them interchangeably. The Court will take either reference to mean December 26, 2019.

Plaintiff proceeds against Deputy Ridings in his official and individual capacities. (*Id*. at 7).  As

his official capacity claim, Plaintiff states:

> The Malvern Police Department practices the use of excessive force.  Fear is a tool
> used in law enforcement in Malvern.  The Malvern Police Department will plant
> evidence and falsify legal documents to get an arrest.  The Malvern Police
> Department, local law enforcement, and court officials all work together conspiring
> to get convictions.  (*Id*. at 7).

For his third claim, Plaintiff alleges excessive force was used against him at his mother's

home on July 13, 2020.  (ECF No. 76 at 7).  Specifically, Plaintiff alleges:

> On or about May 4, 2020, I was at plea and arraignment at the Hot Spring County
> Courthouse.  My trial date was set for September 13, 2020.  Judge Chris E. Williams
> and Gregory Crain whom is a court-appointed lawyer conspired to get me to take a
> 20 year plea.  I did not go to trial that was moved to on or about June 14, 202.  That
> is the date Gregory Crain told me over the phone.  I was in my mom's yard with
> Sylvia Starline when Deputy D. Ledbetter speeded into the driveway. Because of
> previous assaults, I ran.  I was tazzed and beaten unconscious.  I suffered a broken
> jaw, fractured left orbital, sprained wrist, broken ribs, chest contusion, unspecified
> laterel or injured shoulder. Limited use of left arm, and blurred vision, concussion.
> (*Id*. at 8).

Plaintiff proceeds against Deputy Ledbetter in his official and individual capacities.  (*Id*.).  For his

official capacity claim, he states: "The Malvern Police Department practices excessive force and

conspiracy to gain illegal arrests and convictions." (*Id*.).

Plaintiff seeks compensatory and punitive damages in the amount of one million dollars

for his "mental anguish, fright shock and injuries."  (*Id*. at 9).  He also asks the Court to punish

those involved for targeting and terrorizing him.  (*Id*.).

Defendants filed their Motion for Summary Judgment, Brief in Support and Statement of

Undisputed Facts on March 6, 2023.  (ECF Nos. 130, 131, 132).  They note that the first claim

involved only Defendant Ridings, the second involved both Defendants, and the third involved

only Defendant Ledbetter.  (ECF No. 131 at 2).  They argue no excessive force was employed in

any of the encounters.  They provide the following accounts and subsequent results of the

incidents. On December 26, 2019, Defendant Ridings conducted a traffic stop because the vehicle

driven by Plaintiff did not have a license tag. (*Id*.). After making the stop, Defendant Ridings

noted Plaintiff had a suspended license and the vehicle was not registered in his name. It was also

discovered that Plaintiff was a parolee with a search waiver, and he and the vehicle were searched.

(*Id*.). For the December 26, 2019, encounter, they note that:

> Plaintiff was arrested[5] and charged with the following violations of Arkansas state
> criminal law: (1) simultaneous possession of drugs and firearms in violation of Ark.
> Code Ann. § 5-74-106; (2) possession of a firearm by certain persons in violation
> of Ark. Code Ann. § 5-73-103(c)(1); (3) possession of a controlled substance in
> violation of Ark. Code Ann. § 5-64-419(b)(a)(1); and (4) possession of drug
> paraphernalia. Plaintiff pled guilty to all the charges and was sentenced by Hot
> Spring County Circuit Judge Chris E. Williams to 240 months in the Arkansas
> Department of Corrections on July 31, 2020. (*Id*. at 3-4).

For the January 5, 2020, incident they noted a Warrant for Retaking a Prisoner was issued

on January 3, 2020. Defendants, along with other officers, encountered Plaintiff at the Relax Inn

Motel while serving the warrant. (*Id*. at 4-5). Plaintiff was peacefully taken into custody. (*Id*. at

5). The incident report did not indicate any resistance by Plaintiff, any use of force, or any request

for Plaintiff to be taken to a medical facility for treatment. (*Id*.).

For the July 13, 2020, incident, Defendants state a Bench Warrant for Failure to Appear

was issued against Defendant on July 9, 2020, because he failed to appear for trial on the charges

arising from the arrest on December 26, 2019. (*Id*. at 6). Plaintiff fled when Defendant Ledbetter

pulled into the driveway and issued a verbal command for Plaintiff to approach the vehicle. After

Plaintiff ignored multiple verbal commands to stop, he was shot from a short distance with the

tazer in probe mode. (*Id*.). Plaintiff initially fell flat on his face, but then began to struggle

violently to avoid being handcuffed. (*Id*.). He was tazed with the tazer in drive stun mode with

---

[5] Defendants point out that Plaintiff's allegation in his Second Amended Complaint that he was
not arrested is false.

no success.  Defendant Ledbetter also kicked Plaintiff in the stomach and struck him in the area above his nose to gain compliance.  (*Id*. at a 6-7).  Plaintiff was not handcuffed until two other officers responded to the scene and aided Ledbetter.  (*Id*. at 7).  Plaintiff was found to be in possession of three bags of methamphetamine and a scale.  A glass pipe was also found in the chair he had been sitting on in the yard.  (*Id*.).  Plaintiff was transported to St. Vincent Emergency Department in Malvern.  (*Id*.).  Defendant Ledbetter sought emergency treatment for an injury to his hand incurred during the struggle.  (*Id*.).  They further state:

> Plaintiff was charged with possession of methamphetamine with the purpose to deliver, possession of drug paraphernalia (scales), possession of drug paraphernalia (pipe) and battery in the second degree.  He pled guilty to all charges and was sentenced as an habitual offender to 60 months in the Arkansas Department of Corrections.  This sentence runs consecutively with the sentence based on the guilty pleas involving the charges in the December 26, 2019, for a total of 25 years of imprisonment."  (*Id*. at 8).

Plaintiff filed his Response, Memorandum Brief, and Statement of Facts in Support of Response on April 10, 2023.[6]  (ECF Nos. 135, 136, 137).  Attached to his Memorandum Brief (ECF No. 136) are documents entitled "Statement of Disputed Facts" (ECF No. 136-1 at 6) and "Statement of Undisputed Facts."  (ECF No. 136-1 at 17).  Defendants filed their Reply on May 1, 2023.  (ECF No. 144).  Plaintiff filed a Sur-Reply, in violation of local rules, which was then struck from the record.  (ECF Nos. 146, 147, 148).

---

[6] In the documents filed as his Response (ECF No. 135), Memorandum Brief (ECF No. 136), and Statement of Facts Supporting Claim (ECF No. 137), Plaintiff failed to provide citation to the summary judgment record.  In the Order directing him to provide his Summary Judgment Response, Plaintiff was advised that he must provide citation to the record, and if he failed to do so, the Court would not sift through the Summary Judgment Record to find support for his factual contentions.  (ECF No. 133).  Plaintiff did provide record citation in documents in his Statements of Disputed and Undisputed Facts.  (ECF Nos. 136-1 at 6, 136-1 at 17).

## II.      LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.      ANALYSIS

Both Defendants and Plaintiff provided body camera video of the December 2019 and July 2020 incidents. The Court has thoroughly reviewed all submissions, and time stamps will be referred to in the DVDs provided by Plaintiff.

## A.      December 26, 2019

There was no evidence of excessive force for this incident, either in the video or the medical records after the incident.  Plaintiff did not struggle as the handcuffs were applied, and he did not complain that they were too tight on application.  (DVD #1, 7:36).  Plaintiff alleges that Defendant Riding "forcefully shoved him into the police car and punched him in the belly twice.  The video shows Plaintiff entering the car on his own power.  No shoving or punching occurred.  Plaintiff did complain briefly that the handcuffs were tight as he was sliding into the seat.  (DVD #1, 11:48).  Plaintiff alleges his work boots were ripped off.  In his Statements of Fact, Plaintiff adds that Defendant Ridings "forcefully removed his boots without untie them."  (ECF No. 136-1 at 8-9 ¶ 10; 18-19, ¶ 3).  The video shows that Plaintiff's boots did not have laces to untie.  Instead, they were ankle height boots that had elastic on either side and are designed to be pulled on and off.  They came off easily and Plaintiff made no complaint of pain.  The Court observed no roughness in the removal.  (DVD #1, 10:06).  Plaintiff alleges he was in the police car for "several hours" complaining of pain.  In his Statements of Fact, he adds that he sat in the back of the squad car "screaming" in pain for "over 3 hours."  (ECF No. 136-1 at 7 ¶ 7; 19 ¶ 6).  From the beginning of the traffic stop to the time he was placed in the holding cell, the two DVDs recording the incident totaled 51 minutes and 34 seconds, with 4 minutes and 25 seconds of that in the holding cell after the arresting handcuffs were removed.

Plaintiff alleges he could not be booked into the jail because he was complaining of an injury.  He alleges Defendant Riding kicked him and shoved him back into the police car in the sally port of the police station, which injured his hernia, requiring emergency surgery.  None of this is visible on the videos.  Plaintiff later sought and was granted a subpoena of any existing

video for this incident.[7]   (ECF Nos. 124, 126).   The response to this subpoena indicated that the video was not available, as it is only kept for approximately four to six months.   Defendant Riding's affidavit states that, due to Plaintiff's complaints of an injured wrist, he was transported to Baptist Medical Center in Malvern.   While there, the Emergency Room doctor identified a pre-existing hernia and recommended emergency surgery.   (ECF No. 130-3 at 3).   Plaintiff was released from custody for medical reasons.   (*Id*.).

The Baptist Health Medical Records for December 26, 2019, indicate Plaintiff was brought in by the police complaining of right-side groin pain and right wrist pain.   (ECF No. 10-7 at 1). The hospital notes indicate a "long known" and untreated inguinal hernia, which Plaintiff admitted he had not sought treatment for.   (*Id*.).   An emergency urology consult was recommended.   (*Id*. at 3).   Plaintiff told medical staff in the emergency room that the groin pain began when the police removed his boots.   (*Id*. at 1).   As noted above, there was no roughness observed on the video when his boots were removed, and Plaintiff made no complaint of groin or any other pain at that time.   The Court is quite familiar with Plaintiff's complaints of inguinal hernia issues from the summary judgment record in *Nolen v. Cash*, Case No. 6:21-cv-06092-SOH-MEF, which also references his arrest on December 26, 2019.[8]   Plaintiff's longstanding hernia history in that case details his medical records starting in May 2018 and will not be repeated here.   At the time he was transferred from the Arkansas Division of Correction to the Benton Work Release Unit in August 2022, Plaintiff had not received any hernia surgery, either while released specifically to do so or while incarcerated.   (Case No. 6:21-cv-06092-SOH-MEF, ECF No. 47 at 9).   As the undersigned

---

[7] Plaintiff, however, requested the date of December 19, 2019, for the subpoena.   (ECF No. 123).
[8] The Court takes judicial notice of this prior case in this District.   *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records).

noted in the Report and Recommendation for that case, Plaintiff "apparently only found hernia surgery to be an urgent need while incarcerated." (Case No. 6:21-cv-06092-SOH-MEF, ECF No. 47 at 13). Plaintiff's prior case for denial of medical care was dismissed with prejudice on September 25, 2023. (Case No. 6:21-cv-06092-SOH-MEF, ECF No. 49). Thus, Plaintiff has failed to provide any evidence in the summary judgment record that his hernia was either caused by or aggravated by his arrest.

This leaves Plaintiff's allegations of right wrist injury. Plaintiff alleges the handcuffs were too tight. Other than a single brief comment as he was sliding onto the back seat of the police car, he only started complaining of wrist and arm pain after he was informed that the car was going to be towed. He then began loudly and volubly crying, wailing, and screaming about wrist and arm pain while in the back of the squad car. Another officer checked Plaintiff's handcuffs and stated they were fine. (DVD #1, 29:00, DVD #2, 2:24). The Court also notes that he was able to abruptly stop crying in order to yell in a very different tone of voice that a baseball the police found during the car search was his property. (DVD #2, 3:05). In the holding cell video, Plaintiff repeatedly referred to "deep cuts" on his right wrist, and states he is "going to have fun suing you all." The medical records, however, indicate there was "no injury" evident to the right wrist. (ECF No. 130-7 at 1). A radiograph of the right wrist was taken. The findings were as follows: "Distal radioulnar joint and carpal row alignment is normal. No acute fracture is identified. No significant degenerative change is evident. There is no soft tissue swelling or radiopaque foreign body." (*Id*. at 2). In short, Plaintiff's right wrist showed no sign of any injury, let alone "deep cuts."

Thus, Plaintiff's claims of excessive force on December 26, 2019, are blatantly contradicted by the summary judgment record such that no reasonable jury could believe them.

There is no genuine dispute as to any material fact, and the Defendants are entitled to judgment on this claim as a matter of law.

### B.        January 5, 2020

No video was provided in the summary judgment record for the interaction at the Relax Inn Motel on January 5, 2020.  In his Second Amended Complaint, Plaintiff alleges he was thrown to the floor and kneed in the small of the back by Defendant Ridings.  In his Statements of Fact, Plaintiff states he opened the motel room door and "laid down and Ridings drove his knee in the Plaintiff's lower back."  (ECF No. 136-1 at 21).  He also states he opened the door and "went directly to the floor."  (ECF No. 136-1 at 9-10 ¶ 18).  Plaintiff cites his Exhibit F at page 4 and Exhibit G at pages 4-5 in support of his allegation that his lower back was injured.  (*Id*.).  Plaintiff's Exhibit F consists of Hot Spring Jail grievances.  (ECF No. 135-6).  On page 4,[9] Plaintiff makes no reference to being thrown down.  (*Id*. at 5).  He also states that it was Ledbetter who put his knee in his lower back, not Ridings.  (*Id*.).  In the first page of that grievance, he complains of the car search at the Andy's parking lot, including the autographed baseball, but states the stop and arrest happened on December 12, 2019, instead of December 26, 2019.  (*Id*. at 4).  Page 5 is a request form dated March 10, 2020.  (*Id*. at 6).  It makes no mention of any facts related to this case.

Plaintiff's Exhibit G consists of medical records.  (ECF No. 135-7).  Page 4 is dated January 5, 2020, but is a patient information sheet discussing inguinal hernias.  (*Id*. at 5).  Page 5 indicates he is complaining of severe pain.  (*Id*. at 6).  Pages 6-8 discuss his right inguinal hernia issues.  Based on the record before the Court, the entire medical encounter on January 5, 2020, was dedicated to his right inguinal hernia.  The Court also reviewed all pages of the medical records in

---

[9] Plaintiff added a cover page to the Exhibit, making his hand-numbered pages ahead by one page in the CM/ECF stamp.

Exhibit G.  Pages 2-3 of the records are dated December 26, 2019.  (*Id*. at 2-3).  The remaining medical records in Exhibit G are dated July 13, 2020.  (*Id*. at 9-24).  The medical record for January does not indicate if he was brought in under police custody or arrived on his own.  Thus, Plaintiff has provided internally inconsistent factual allegations concerning the incident and cited medical documents which either do not discuss his lower back or are on dates other than January 5, 2020. In contrast, Defendants provided affidavits from both Ridings and Ledbetter stating that no force was used in arresting Plaintiff on this date, and there was no request to take him to a medical facility due to this arrest.  (ECF Nos. 130-3, 130-4).

Plaintiff's claims of excessive force on January 5, 2020, are blatantly contradicted by the summary judgment record such that no reasonable jury could believe them. There is no genuine dispute as to any material fact and the Defendants are entitled to judgment on this claim as a matter of law.

## C.    July 13, 2020

The body camera video provided for this incident is troubling.  "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018) (cleaned up).  "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Coker v. Ark. State Police*, 734 F.3d 838, 842 (8th Cir. 2013) (cleaned up).  This determination is made without regard to the officer's subjective intent or motivation. *Zubrod v. Hoch*, 907 F.3d 568, 575 (8th Cir. 2018) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012)).

In evaluating an excessive force claim under the Fourth Amendment, a court must consider whether the force was objectively reasonable under the circumstances, "rely[ing] on the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)). The application of this standard requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-397.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1081 (8th Cir. 1990) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). To conduct an arrest, some degree of force is necessary. Therefore, the fact that force is used during an arrest does not ipso facto establish a Fourth-Amendment violation. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003) ("Fourth Amendment jurisprudence has long recognized…the right to make an arrest…necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (internal quotation marks and citation omitted).

The video begins with Plaintiff running from Defendant Ledbetter, at which time he is shot with a taser and drops full length on the ground face forward. Ledbetter manages to get a handcuff on his left hand, but Plaintiff fell with his right hand underneath him. (DVD at 00:09). Ledbetter was able to pull the right arm out from under Plaintiff, but Plaintiff was then able to pull the arm

away and forward while still laying on the ground.  A several-minute violent altercation then ensued, with Plaintiff being tazed directly with the tazer multiple times[10] with seemingly little or no effect.  (DVD at 00:51).  Defendants have described the direct application of the tazer as drive stun mode, note that it is the lowest setting, and state that it is intended to cause pain, not to incapacitate.  (ECF No. 131 at 6-7).  The medical records for that date also indicate that Plaintiff suffered documented injuries because of the altercation.  These include taser prong in the right shoulder, a closed blow-out fracture of the left orbital floor, a closed fracture of the right mandibular angle, a contusion on his chest wall, foreign bodies in his skin, and a left wrist sprain. He was also diagnosed with methamphetamine abuse.  (ECF No. 135-7 at 13).

At no time during the video, however, was Plaintiff in any way compliant with the officers. Instead, he first attempted to flee and then he strongly resisted arrest.  He stood up several times and tried to go towards Ledbetter.  (DVD at 2:55, 3:08, 3:58).  He stood another time.  (DVD at 4:02).  At one point he appeared to attempt to strike Ledbetter.  At 4:13 minutes into the altercation, several other officers arrived and two officers, aided by a third, were able to take him to the ground. After he was on the ground, Plaintiff still had his right arm clutched underneath him, and started yelling that he could not breath and was going to die.  Plaintiff was finally handcuffed at 5:06 minutes into the altercation.  An EMT was called.  Defendant Ledbetter told the other officers at the scene that Plaintiff took several swings at him, and it was necessary for him to kick Plaintiff in the stomach and hit him in the face, he thought near his nose.  (DVD at 20-35).  These actions were not viewable on the video due to the angle of the camera.  Defendant Ledbetter also discussed an injury to his hand because of the altercation, holding up a bleeding hand several times.

---

[10] It was difficult to count the number of times he was tazed on the video, but it appeared that the trigger of the tazer may have been pulled as many at 10 times after the initial tazer shot which dropped him.

Plaintiff argues Defendant Ledbetter violated the Malvern police departments' policies for both the use of electronic control devices and foot pursuits.  He cites his Exhibit A, at pages 1, 19, and 21 in support.  (ECF No. 136-1 at 23).  On page 19, the policy states that an officer should consider alternatives to pursuit, including whether the identity of the subject is known and if apprehension later would be possible.  (ECF No. 135-1 at 18-19.[11]).  The policy further states that the primary officer should not try to overtake a fleeing suspect but should keep him in sight until sufficient manpower is available to take him into custody.  (*Id*. at 20).  Finally, department policy indicates that flight alone is not a justification for the use of an electronic control device.  (*Id*. at 24). Based on the summary judgment record before the Court, Defendant Ledbetter may have violated department policy.   Further, the violent altercation and subsequent injuries, to both Defendant Ledbetter and the Plaintiff, may have been avoided if other officers had been present at the start of the arrest.  A single violation of a police department policy, however, does not rise to the level of a constitutional violation.  *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988) ("police department guidelines do not create a constitutional right").

Plaintiff argues that he had a shoulder injury and could not put his hands behind his back. (ECF No. 136-1 at 12, 23).  He cites his Exhibit E, at page 9; Exhibit G, at pages 22, 23; and Exhibit H in support.  (*Id*.).  In Exhibit E, Plaintiff circles a reference to a chest contusion in a discovery response.  (ECF No. 135-5 at 10).  In Exhibit G, Plaintiff's referenced pages are a patient information sheet for inguinal hernia and a jail intake sheet indicating a fractured jaw, ribs, and wrist.  (ECF No. 135-7 at 23-24).  None of these documents provide evidence of a right shoulder injury.  Exhibit H references the DVD for July 13, 2020.  In the video, Plaintiff does not state that

---

[11] The document cites are to the CM/ECF document pages.  Plaintiff frequently cites to handwritten page numbers on the exhibits.

he has a shoulder injury or that he cannot put his arm back at any time during the altercation. While later records indicate he had a taser prong in the right shoulder, he was able to freely move his right arm away from Defendant Ledbetter.  When he was being held by multiple officers and handcuffed, he was able to repeatedly yell that he could not breathe and that he was going to die. During this outburst he made no statement that his shoulder was injured or that he could not put his right arm behind his back.

Thus, Plaintiff's claims of excessive force on July 13, 2020, are blatantly contradicted by the summary judgment record such that no reasonable jury could believe them. There is no genuine dispute as to any material fact for this incident and the Defendants are entitled to judgment as a matter of law.

### IV.      CONCLUSION

Accordingly, it is recommended that Plaintiff's Second Amended Complaint (ECF No. 76) be DISMISSED WITH PREJUDICE.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of January 2024.

/s/ *Mark E. Ford*
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE